UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| TERRANCE E. WILLIAMS,<br><br>    Plaintiff<br><br>v.<br><br>RYALS, et al.,<br><br>    Defendants | Case No.: 3:21-cv-00133-ART-CSD<br><br>**Report & Recommendation of<br>United States Magistrate Judge**<br><br>Re: ECF No. 43 |

This Report and Recommendation is made to the Honorable Anne R. Traum, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is defendant Santos's motion for summary judgment. (ECF Nos. 43, 43-1 to 43-6.) Plaintiff filed a response. (ECF No. 53.) Santos filed a reply. (ECF No. 56.)

After a thorough review, it is recommended that Santos's motion be denied because there are disputed material facts that must be resolved by a jury.

**I. BACKGROUND**

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), however, the events giving rise to this action took place while Plaintiff was housed at the Washoe County Detention Facility (WCDF) as a pretrial detainee. Plaintiff is proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Second Amended Complaint (SAC), ECF No. 7.)

The court screened Plaintiff's SAC and allowed him to proceed with an excessive force claim against defendants Deputies Wuepper, Santos, and Reza. The claim is based on allegations that Deputies Wuepper and Santos unnecessarily deployed pepper spray against him, and he

subsequently had an abnormal x-ray revealing fluid in his lung. He further avers that Deputy Reza filmed the incident without intervening. (ECF No. 10.)

Santos moves for summary judgment, arguing that he did not violate Plaintiff's rights because he did not order the cell extraction, he did not authorize the use of pepper spray, and he did not deploy the pepper spray against Plaintiff. Instead, Santos contends he was merely present before and during Plaintiff's removal from his cell.[1]

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477

---

[1] Deputies Wuepper and Reza have separately moved for summary judgment (ECF Nos. 71, 74); however, those motions are not yet fully briefed.

2

U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine

dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

**A. Facts**

The incident involving deployment of the pepper spray into Plaintiff's cell occurred on February 2, 2022. (Santos Aff., ECF No. 43-1.)

Deputy Abina (not a defendant) had communications with Plaintiff about a commissary order that had not yet arrived. Abina explained to Plaintiff that the commissary order may be returned because Plaintiff had recently moved from a different housing unit. According to Abina, Plaintiff began to curse and threaten that he would "choke [Abina] out" and to "just ask Deputy Gonzalez." Abina says Plaintiff was referring to a prior battery on Deputy Gonzalez in March of 2019. (Abina Aff., ECF No. 43-2.)

According to Santos, at some point Plaintiff then refused to return his food tray and challenged deputies to retrieve the food tray, saying "Fuck you. If you want it, come and get it." Santos attempted to talk with Plaintiff, but was unsuccessful, and notified other deputies of the situation. (Santos Aff., ECF No. 43-1.)

Deputy Ashby (not a defendant) responded to the housing unit for a report of an inmate who was refusing to return his food tray and was physically challenging deputies to retrieve the tray. Ashby and another deputy approached the cell to attempt to recover the food tray. Plaintiff refused. Ashby observed Plaintiff wrapping his limbs in bedsheets, which Ashby believed indicated that Plaintiff was preparing for a physical altercation. Ashby claims that he asked Plaintiff if he would hurt any of the deputies that entered the cell, and Plaintiff replied, "yes." As a result, Ashby concluded Plaintiff was a danger to himself and to deputies, and a decision was made to move Plaintiff to a new cell that allowed him to be more closely observed by staff.

Ashby prepared the Detention Response Team (DRT) to assist in the extraction to move Plaintiff to a new cell. Ashby states that he made the decision to use chemical agents in the extraction due to Plaintiff's threats toward staff and his observations that Plaintiff was preparing for a physical altercation. In Ashby's experience, extractions can be dangerous when chemical agents are not used to subdue a non-compliant inmate.

Ashby gave instructions to Plaintiff that he allow himself to be placed in restraints, and that a failure to follow the instructions would result in force being used, including chemical agents. Plaintiff refused to comply. Ashby spoke with Sergeant Gamboa (not a defendant) to confirm Plaintiff should be removed from his cell, and when he received confirmation, Ashby initiated the use of chemical agents into Plaintiff's cell. Ashby states the chemical agents were used to subdue Plaintiff because he was a threat to himself and deputies if he was extracted in his agitated state. Plaintiff attempted to block the door and window with his mattress. (Ashby Aff., ECF No. 43-3; Gamboa Aff., ECF No. 43-4.)

Defendant Wuepper assisted in deploying the chemical agents. Two cannisters of chemical agents were administered into Plaintiff's cell through the food slot. (Wuepper Aff., ECF No. 43-5.)

Santos did not make the decision to activate the DRT team, and he did not take part in the decision to use chemical agents against Plaintiff. Santos did not deploy the chemical agents or participate in Plaintiff's extraction from his cell. However, Santos was present during the use of chemical agents and extraction. (Santos Aff., ECF No. 43-1.)

Plaintiff, on the other hand, asserts he was not an immediate threat to anyone. He returned the plastic food tray, yet chemical agents were still used against him when he was unarmed, defenseless and locked in a cell, and not a physical threat to anyone.

The video of the incident submitted by Santos (manually filed) shows the DRT team going to Plaintiff's cell. Plaintiff can be seen in the window of the cell and was told to give them the tray and "cuff up." Plaintiff was told if he did not follow the instructions, force would be used. Plaintiff complied and gave the tray back.

He was then told to back away from the food slot twice and was cautioned that if he did not follow instructions, force would be used against him, including chemical agents. Plaintiff was then told to lie down and face away from the door and put his hands at his sides. Plaintiff stood in the window of the cell holding what is later revealed to be the mattress from his cell against the door. Plaintiff was asked if he would follow the instructions, and Plaintiff put the mattress back up against the cell door, and remained standing in the cell window. A cover was placed over the window by a deputy. It was briefly taken off while a deputy looked inside the cell. Chemical agents were then deployed into Plaintiff's cell. Plaintiff was instructed to lie down on the ground with his hands out to the sides, facing the back wall. The DRT team then entered

Plaintiff's cell and Plaintiff was on the ground. Plaintiff was restrained and removed from the cell. Plaintiff can be heard coughing while he is being restrained.

**B. Excessive Force Standard for a Pretrial Detainee**

"[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Graham v. Connor*, 490 U.S. 386, 395, n. 10 (1989).

In determining whether the force used against a pretrial detainee is excessive, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015).

"[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'" *Id*. at 397 (quoting *Graham*, 490 U.S. at 396). "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id*. "A court must also account for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Id*. (quoting *Bell v. Wolfish*, 441 U.S. 520, 540 (1979)).

The following is a non-exhaustive list of considerations that "may bear on the reasonableness or unreasonableness of the force used[:]"

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id*. (citing *Graham*, 490 U.S. at 396).

In addition, as is relevant here, "officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *United States v. Koon*, 34 F.3d 1416, 1447 n. 25 (9th Cir. 1994), *rev'd on other grounds,* 518 U.S. 81 (1996). Officers can be liable for failing to intercede if they had an opportunity to do so. *Cunningham v. Gates,* 229 F.3d 1271, 1289 (9th Cir. 2000) (officers did not have a realistic opportunity to intervene because they were not present at the time of the shooting). Liability for failure to intervene may extend to those who did not take affirmative action to contribute to the excessive force. *See Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995); *see also Lolli v. County of Orange*, 351 F.3d 410, 418 (9th Cir. 2003) (sergeant was not entitled to summary judgment where he admitted he observed the deputies struggling with the plaintiff, but did not become involved or give orders); *M.H. v. County of Alameda,* 62 F.Supp.3d 1049, 1093 (N.D. Cal. Apr. 11, 2014) (deputies were not entitled to summary judgment where they were present during the altercation and admitted, at a minimum, that they participated in the effort to control the plaintiff by touching him in some way).

Summary judgment in excessive force cases is "granted sparingly" because these cases nearly "always require[ ] a jury to sift through disputed factual contentions, and to draw inferences[.]" *Lolli*, 351 F.3d at 415-16 (citation and quotation marks omitted). "To defeat summary judgment, [the plaintiff] must show that a reasonable jury could have found that the officer's use of force was excessive." *Id*. (citation omitted).

**C. Analysis**

Santos cites the objective reasonableness standard for a pretrial detainee asserting a claim of *inadequate medical care* from *Gordon v. County of Orange,* 888 F.3d 1118 (9th Cir. 2018); however, a pretrial detainee's claim of *excessive force* is governed by the objective

reasonableness standard set forth in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015). Santos has not addressed the factors set out in *Kingsley* and *Graham*; therefore, Santos has not met his burden.

In addition, Santos argues he is not liable because he did not make the decision to utilize chemical agents and did not himself deploy the chemical agents into Plaintiff's cell. However, Santos' possible liability hinges on whether it was objectively reasonable for the other officers to deploy pepper spray into Plaintiff's cell. In this regard, even if Santos had addressed the *Kingsley/Graham* factors, there are disputed facts that require the denial of Santos's motion for summary judgment.

The first factor is the need for the use of pepper spray. Santos presents affidavits that Plaintiff had become combative, and was challenging deputies to come and get the food tray from his cell, and that Plaintiff referenced a prior assault on an officer.

Deputy Ashby states in his affidavit that he asked Plaintiff if he would hurt any deputies that entered the cell, and Plaintiff responded affirmatively. As such, it was determined Plaintiff was a danger to deputies and to himself and would be moved to a new cell that would allow him to be observed more closely by staff. When Plaintiff did not follow instructions to be placed in restraints to be taken to the new cell, Deputy Ashby made the decision to use chemical agents to subdue Plaintiff because he was a threat to himself and deputies if he was extracted in his agitated state.

At this point, however, Plaintiff had returned the tray and was in a cell by himself. It is unclear how he posed a danger to himself, and why he could not be left in his cell. "[W]here there is no need for force, *any* force used is constitutionally unreasonable." *Lolli v. County of Orange*, 351 F.3d 410, 417 (9th Cir. 2003) (emphasis added, quotation marks and citation

omitted). "[I]t is the need for force which is at the heart of the consideration of the *Graham* factors." *Alexander v. City & County of San Francisco*, 29 F.3d 1355, 1367 (9th Cir. 1994). *Lolli* recognized that a jury could find that there was no need for the use of force, and a jury could conclude that the use of pepper spray alone was unreasonable. *Lolli*, 351 F.3d at 417. The court similarly finds that a jury could determine it was not necessary to deploy two cannisters of pepper spray into Plaintiff's cell when he had returned the food tray and was locked in a cell by himself.

The next factor is the amount of force used. The evidence demonstrates that two cannisters of chemical agents were deployed into Plaintiff's cell. (Wuepper Aff., ECF No. 43-5 ¶ 10.) In *Furnace v. Sullivan*, 705 F.3d 1021, 1029, 1030 (9th Cir. 2013), the court reversed the grant of summary judgment, finding there was an issue of fact as to whether spraying two cans of pepper spray without significant provocation or warning was necessary to gain compliance. In *Furnace*, the plaintiff was locked in his cell behind a large metal door and maintained he had not made any aggressive or threatening remarks or taken any action. Here, Plaintiff was similarly locked in his cell. While a deputy contends that Plaintiff had earlier made a remark about hurting officers if they came in to retrieve the tray, the tray was subsequently returned, and it is not clear there was still a basis to remove Plaintiff from his cell. In addition, while he did put his mattress against the door, Plaintiff was nevertheless behind a locked cell door. A jury could conclude the use of two cans of chemical agents under these circumstances was objectively unreasonable.

Santos does not specifically address the extent of Plaintiff's injuries in his motion, but Deputy Wuepper does state that at some point he returned to where Plaintiff was moved, and Plaintiff was not showing any adverse reactions to the chemical agents. (Wuepper Aff., ECF No. 43-5 ¶ 15.) It is not clear how long after the use of the chemical agents Wuepper returned to

Plaintiff's cell. Plaintiff's verified pleading asserts that he nearly suffered asphyxiation and that while he had a normal chest x-ray before the incident, a chest x-ray subsequent to the incident showed fluid in his lung. In addition, Plaintiff can be heard coughing and clearing his throat on the video after his cell door was opened for the extraction and while being escorted away from his cell. Therefore, there is a dispute concerning the extent of Plaintiff's injuries.

With respect to efforts made to temper or limit the amount of force, Santos presents evidence that commands were given for Plaintiff to comply with instructions to be restrained to be taken to another cell, and Plaintiff was cautioned that if he failed to follow the instructions force would be used, including chemical agents. Again, when these instructions were given, Plaintiff had returned the food tray, and a jury could conclude that there was no further basis for the use of force.

The next factors are the severity of the security problem at issue and the threat reasonably perceived by the officer. There is an affidavit that indicates Plaintiff said he would hurt officers if they entered the cell to remove the food tray. At the same time, Plaintiff was in a locked cell by himself, and he had returned the food tray before the chemical agents were used. It is unclear how Plaintiff was a threat to himself or others at that point. Santos's motion mentions that Plaintiff had not been taking his mental health medications, but there is no actual evidence in the record to support this assertion.

Finally, it does not appear Plaintiff could have been "actively resisting officers," when he was locked in his cell alone.

On balance, there are disputed factual issues concerning whether it was objectively reasonable to deploy two cannisters of chemical agents into Plaintiff's cell to gain his

compliance under the circumstances. Whether Santos should have intervened is dependent on resolution of these issues. Therefore, Santos's motion for summary judgment should be denied.

### IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **DENYING** Santos's motion for summary judgment (ECF No. 43).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: May 23, 2022

_____
Craig S. Denney
United States Magistrate Judge