1

2

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

3

TERRANCE E. WILLIAMS,

Case No.: 3:21-cv-00133-ART-CSD

4

Plaintiff

**Report & Recommendation of
United States Magistrate Judge**

5

v.

Re: ECF No. 71

6

RYALS, et al.,

7

Defendants

8

9

This Report and Recommendation is made to the Honorable Anne R. Traum, United

States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28

10

U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

11

Before the court is defendant Wuepper's motion for summary judgment. (ECF Nos. 71,

12

71-1 to 7-13.) Plaintiff filed a response. (ECF No. 106.) Wuepper filed a reply. (ECF No. 109.)

13

After a thorough review, it is recommended that Wuepper's motion be denied.

14

**I. BACKGROUND**

15

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC),

16

however, the events giving rise to this action took place while Plaintiff was housed at the

17

Washoe County Detention Facility (WCDF) as a pretrial detainee. Plaintiff is proceeding pro se

18

with this action pursuant to 42 U.S.C. § 1983. (Second Amended Complaint (SAC), ECF No. 7.)

19

The court screened Plaintiff's SAC and allowed him to proceed with an excessive force

20

claim against defendants WCDF Deputies Wuepper, Santos, and Reza. The claim is based on

21

allegations that Deputies Wuepper and Santos unnecessarily deployed pepper spray against him,

22

and Deputy Reza filmed the incident without intervening. (ECF No. 10.)

23

1    Wuepper moves for summary judgment, arguing that deploying pepper spray into

2  Plaintiff's cell was not objectively unreasonable under the circumstances.

3                              **II. LEGAL STANDARD**

4    The legal standard governing this motion is well settled: a party is entitled to summary

5  judgment when "the movant shows that there is no genuine issue as to any material fact and the

6  movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp.*

7  *v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the

8  evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v.*

9  *Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome

10  of the case. *Id.* at 248 (disputes over facts that might affect the outcome will preclude summary

11  judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the

12  other hand, where reasonable minds could differ on the material facts at issue, summary

13  judgment is not appropriate. *Anderson*, 477 U.S. at 250.

14    "The purpose of summary judgment is to avoid unnecessary trials when there is no

15  dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

16  F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose

17  of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477

18  U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that

19  one party must prevail as a matter of law"). In considering a motion for summary judgment, all

20  reasonable inferences are drawn in the light most favorable to the non-moving party. *In re*

21  *Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach*

22  *& Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the

23  nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,*

2

1   477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and

2   determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255;

3   *Anderson*, 477 U.S. at 249.

4        In deciding a motion for summary judgment, the court applies a burden-shifting analysis.

5   "When the party moving for summary judgment would bear the burden of proof at trial, 'it must

6   come forward with evidence which would entitle it to a directed verdict if the evidence went

7   uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing

8   the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp.*

9   *Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations

10  omitted). In contrast, when the nonmoving party bears the burden of proving the claim or

11  defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate

12  an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving

13  party cannot establish an element essential to that party's case on which that party will have the

14  burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

15       If the moving party satisfies its initial burden, the burden shifts to the opposing party to

16  establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v.*

17  *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine

18  dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute

19  be shown to require a jury or judge to resolve the parties' differing versions of truth at trial."

20  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)

21  (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment

22  by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475

23  U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the

pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

**A. Facts**

The incident involving deployment of chemical agents into Plaintiff's cell occurred on February 2, 2022. (Santos Aff., ECF No. 71-5; Ashby Aff., ECF No. 71-7; Gamboa Aff., ECF No. 71-8; Wuepper Aff., ECF No. 71-9.)

Deputy Abina (not a defendant) had communications with Plaintiff about a commissary order that had not yet arrived. According to Abina, Plaintiff began to "curse and threaten" that he would "choke [Abina] out" and said, "just ask Deputy Gonzalez," referring to a prior incident of assault against another deputy in March of 2019. (Abina Aff., ECF No. 71-6 at 2.) According to Deputy Santos, at some point later that day, Plaintiff refused to return his food tray and challenged deputies to retrieve it, saying: "Fuck you. If you want it, come and get it." He again referenced a time when he attacked another deputy. (Santos Aff., ECF No. 71-5.) Deputy Ashby reported to Plaintiff's cell at approximately 4:30 p.m., and Plaintiff was instructed to return the food tray, but he refused. Ashby observed Plaintiff wrapping his limbs and hands in his bedsheets, which Ashby believed was an indication he was preparing for a physical altercation. Ashby opened the food slot and asked Plaintiff if he would hurt any deputies that entered the cell, and Plaintiff responded, "yes." (Ashby Aff., ECF No. 71-7.)

Sergeant Gamboa made the decision to have Plaintiff removed from his cell and be taken to intake for further evaluation and observation because he was being combative and Gamboa believed Plaintiff was a danger to himself. (Gamboa Aff., ECF No. 71-8.)

1    Ashby prepared the Detention Response Team (DRT) to assist in the extraction to move

2 Plaintiff to a new cell. Ashby made the decision to use chemical agents to subdue Plaintiff

3 because of Plaintiffs threats toward staff and his observed preparations for a physical altercation.

4 Ashby gave instructions to Plaintiff to allow himself to be placed in restraints, and Plaintiff was

5 warned a failure to follow instructions may result in physical force, including the use of chemical

6 agents. Plaintiff did not follow the instructions. Ashby initiated the use of chemical agents

7 because Plaintiff was a threat to himself and deputies if extracted in his agitated state. Plaintiff

8 attempted to block the door and window with his mattress. (Ashby Aff., ECF No. 71-7.)

9    Wuepper administered two cannisters of chemical agents into Plaintiff's cell. After this,

10 Ashby opened Plaintiff's cell door and Wuepper assisted in applying restraints to Plaintiff and

11 escorted him to intake. Wuepper later returned to the holding cell and observed Plaintiff was

12 compliant and not showing any adverse reactions to the chemical agents. (Wuepper Aff., ECF

13 No. 71-9.)

14    Plaintiff, on the other hand, asserts he was not an immediate threat to anyone. He claims

15 he had returned the plastic food tray, yet chemical agents were still used against him while he

16 was locked in his cell by himself and was not a threat to anyone.

17    The video of the incident shows the DRT team going to Plaintiff's cell. Plaintiff can be

18 seen in the window of the cell and was told to give them the tray and "cuff up." Plaintiff was also

19 told that if he did not follow the instructions, force would be used. Plaintiff complied and gave

20 the tray back.

21    Plaintiff was then told to back away from the food slot twice, and was cautioned that if he

22 did not follow instructions, force would be used against him, including chemical agents. Plaintiff

23 was then told to lie down and face away from the door and put his hands at his sides. Plaintiff

1 stood in the window of the cell holding his mattress against the door. Plaintiff was asked if he

2 would follow instructions and he put the mattress back up against the cell door and remained

3 standing in the window. A cover was placed over the window by a deputy. Chemical agents were

4 then deployed into Plaintiff's cell. Plaintiff was instructed to lie down on the ground with his

5 hands out to the sides, facing the back wall. The DRT team then entered Plaintiff's cell and

6 Plaintiff can be seen on the ground. Plaintiff was restrained and removed from the cell. Plaintiff

7 can be heard coughing and clearing his throat while being restrained.

8 **B. Excessive Force Standard for a Pretrial Detainee**

9      "[T]he Due Process Clause protects a pretrial detainee from the use of excessive force

10 that amounts to punishment." *Graham v. Connor*, 490 U.S. 386, 395, n. 10 (1989). In

11 determining whether the force used against a pretrial detainee was excessive, the court utilizes an

12 objective reasonableness standard. *Kingsley v. Hendrickson*, 576 U.S. 389, 396 (2015). "[A]

13 pretrial detainee must show only that the force purposely or knowingly used against him was

14 objectively unreasonable." *Id*. at 396-97.

15      "[O]bjective reasonableness turns on the 'facts and circumstances of each particular

16 case.'" *Id*. at 397 (quoting *Graham*, 490 U.S. at 396). "A court must make this determination

17 from the perspective of a reasonable officer on the scene, including what the officer knew at the

18 time, not with the 20/20 vision of hindsight." *Id*. "A court must also account for the 'legitimate

19 interests that stem from [the government's] need to manage the facility in which the individual is

20 detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail

21 officials 'are needed to preserve internal order and discipline and to maintain institutional

22 security.'" *Id*. (quoting *Bell v. Wolfish*, 441 U.S. 520, 540 (1979)).

23

The following is a non-exhaustive list of considerations that may bear on the

reasonableness or unreasonableness of the force used:

> [T]he relationship between the need for the use of force and the
> amount of force used; the extent of the plaintiff's injury; any effort
> made by the officer to temper or limit the amount of force; the
> severity of the security problem at issue; the threat reasonably
> perceived by the officer; and whether the plaintiff was actively
> resisting.

*Id.* (citing *Graham*, 490 U.S. at 396).

Summary judgment in excessive force cases is "granted sparingly" because these cases

nearly "always require[ ] a jury to sift through disputed factual contentions, and to draw

inferences[.]" *Lolli v. County of Orange*, 351 F.3d 410, 415-16 (9th Cir. 2003) (citation and

quotation marks omitted). "To defeat summary judgment, [the plaintiff] must show that a

reasonable jury could have found that the officer's use of force was excessive." *Id.* (citation

omitted).

**C. Analysis**

The court finds, as it did with defendant Santos' motion for summary judgment, that there

are genuinely disputed material facts that preclude granting summary judgment in Wuepper's

favor.

First, there is a dispute concerning the need for the use of force. Wuepper argues that

Plaintiff was off his psychiatric mediations, he had a history of violence against staff, and he was

threatening officers and withholding his food tray. The affidavits of Sergeant Gamboa (who

ordered Plaintiff's extraction), Deputy Ashby (who decided to use chemical agents in the

extraction) and Wuepper (who deployed the chemical agents) are devoid of facts indicating they

had any knowledge of Plaintiff's use (or lack thereof) of psychiatric medications or of Plaintiff's

mental health history.

1    None of the affidavits state that it was determined Plaintiff should be moved from his cell

2 and chemical agents administered because of Plaintiff's violent history. Instead, Sergeant

3 Gamboa's affidavit states that he made the decision to remove Plaintiff from his cell because

4 Plaintiff was being combative, and Gamboa believed he was a danger to himself. (Gambo Aff.,

5 ECF No. 71-8 at 2 ¶ 6.) While Plaintiff may have mentioned a prior incident of violence against

6 another staff member, during *this* incident, Plaintiff was alone in his cell, and the video confirms

7 that Plaintiff had returned the food tray. It is unclear why there was a need to enter Plaintiff's cell

8 after he returned the food tray.

9    "[W]here there is no need for force, *any* force used is constitutionally unreasonable."

10 *Lolli*, 351 F.3d at 417 (emphasis added, quotation marks and citation omitted). *Lolli* recognized

11 that a jury could conclude that there was no need for the use of force, and therefore, the use of

12 pepper spray alone was unreasonable. *Id*.

13    The next factor is the amount of force used. In *Furnace v. Sullivan*, 705 F.3d 1021, 1029-

14 30 (9th Cir. 2013), the plaintiff was locked in his cell behind a large metal door and maintained

15 he had not made any aggressive or threatening remarks or taken any action. The court reversed

16 the grant of summary judgment, finding there was an issue of fact as to whether spraying two

17 cans of pepper spray was necessary to gain compliance. Again, while Plaintiff may have made a

18 remark earlier about hurting officers if they came into his cell to retrieve the tray, by the time the

19 decision was made to deploy the chemical agents, Plaintiff had returned the tray and was locked

20 in his cell by himself. Insofar as Plaintiff put his mattress against his door, this was after Plaintiff

21 saw them preparing the chemical agents, and was likely done in an effort to stop the chemical

22 agents from permeating his cell. A jury could conclude the use of two cannisters of chemical

23 agents under these circumstances was objectively unreasonable.

8

1    The next factor is the extent of Plaintiff's injury. Wuepper asserts that medical records

2  and his own observations indicate Plaintiff did not suffer any adverse reaction to the chemical

3  agents. In the video, Plaintiff can be heard coughing and clearing his throat after his cell door

4  was opened for extraction and while he was being escorted away from his cell. In addition,

5  contrary to Wuepper's assertion, the medical records do note that Plaintiff complained of blurred

6  vision, burning eyes, and burning lungs when taking a breath or coughing on February 14 and

7  February 17, 2020, roughly two weeks after the incident. (ECF Nos. 71-3 at 2; 71-10 at 3-4.)

8  Therefore, a dispute exists concerning the extent of Plaintiff's injuries.

9    With respect to efforts made to temper or limit the amount of force, Wuepper presents

10  evidence that commands were given for Plaintiff to comply with instructions to be restrained to

11  be taken to another cell, and Plaintiff was cautioned that if he failed to follow the instructions,

12  then force would be used, including chemical agents. Again, when these instructions were given,

13  Plaintiff had returned the food tray, and a jury could conclude there was no further basis for the

14  use of force.

15    Next, there is a dispute concerning the severity of the security problem at issue and the

16  threat reasonably perceived by the officer. The threat began with Plaintiff keeping his plastic

17  food tray. Plaintiff is reported to have challenged staff to go into his cell to get the tray, and

18  referred to a prior incident of violence. The fact remains, however, that Plaintiff returned the

19  food tray and was alone in his cell when the chemical agents were deployed. While Wuepper

20  argues that Plaintiff was a danger to himself and others, a jury could conclude that Plaintiff did

21  not pose any danger to himself or others when the decision was made to utilize chemical agents.

22    Finally, a jury could conclude that Plaintiff was not "actively" resisting officers when he

23  was locked alone in his cell before the chemical agents were deployed.

In sum, disputed factual issues exist concerning whether it was objectively reasonable to deploy two cannisters of chemical agents into Plaintiff's cell to gain his compliance under the circumstances. Therefore, Wuepper's motion for summary judgment should be denied.

### IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **DENYING** Wuepper's motion for summary judgment (ECF No. 71).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: September 13, 2022

_____
Craig S. Denney
United States Magistrate Judge

10