UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| TERRANCE E. WILLIAMS,<br><br>  Plaintiff<br><br>v.<br><br>RYALS, et al.,<br><br>  Defendants | Case No.: 3:21-cv-00133-ART-CSD<br><br>**Report & Recommendation of<br>United States Magistrate Judge**<br><br>Re: ECF No. 74 |

This Report and Recommendation is made to the Honorable Anne R. Traum, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is defendant Reza's motion for summary judgment. (ECF Nos. 74, 74-1 to 74-12.) Plaintiff filed a response. (ECF No. 108.) Reza filed a reply. (ECF No. 110.)

After a thorough review, it is recommended that Reza's motion be denied.

**I. BACKGROUND**

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), however, the events giving rise to this action took place while Plaintiff was housed at the Washoe County Detention Facility (WCDF) as a pretrial detainee. Plaintiff is proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Second Amended Complaint (SAC), ECF No. 7.)

The court screened Plaintiff's SAC and allowed him to proceed with an excessive force claim against defendants Deputies Wuepper, Santos, and Reza. The claim is based on allegations that Deputies Wuepper and Santos unnecessarily deployed pepper spray against him, and Deputy Reza filmed the incident without intervening. (ECF No. 10.)

1  Reza previously moved for summary judgment, arguing she was entitled to qualified
2  immunity. She argued that the law was not clearly established that she should have left her post
3  of filming the incident to intervene in the cell extraction. (ECF No. 22.) Reza's motion was
4  denied with the court finding the law was clearly established that an officer violates a prisoner's
5  rights by failing to intervene if he or she had an opportunity to do so, and there were genuinely
6  disputed facts regarding whether Reza had a reasonable opportunity to intervene. (ECF Nos. 40,
7  49.)
8  Reza has now filed a second motion for summary judgment. (ECF No. 74.) She argues:
9  there was no underlying constitutional violation; she did not have a reasonable opportunity to
10 know of the alleged constitutional violation; and she could not have intervened even if she
11 thought a constitutional violation was occurring.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving

party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

**A. Facts**[1]

The incident involving deployment of chemical agents into Plaintiff's cell occurred on February 2, 2022. (Santos Aff., ECF No. 74-5; Ashby Aff., ECF No. 74-7; Gamboa Aff., ECF No. 74-8; Wuepper Aff., ECF No. 74-9.)

---

[1] Reza includes exhibits that are not referenced in her motion. (ECF Nos. 74-1, 74-2, 74-3, 74-4.) It appears she included the same exhibits defendant Wuepper utilized to support his motion for summary judgment, even though most of these exhibits are not referenced in and are not relevant to Reza's motion. The court has not considered those exhibits which are not referenced in Reza's motion.

     According to defendant Reza, Deputy Abina (not a defendant) had communications with Plaintiff about a commissary order that had not yet arrived. According to Abina, Plaintiff began to "curse and threaten" that he would "choke [Abina] out" and said, "just ask Deputy Gonzalez," referring to a prior incident of assault against another deputy in March of 2019. (Abina Aff., ECF No. 74-6 at 2.) According to Deputy Santos, at some point later that day, Plaintiff refused to return his food tray and challenged deputies to retrieve it, saying: "Fuck you. If you want it, come and get it." He again referenced a time when he attacked another deputy. (Santos Aff., ECF No. 74-5.) Deputy Ashby reported to Plaintiff's cell at approximately 4:30 p.m., and Plaintiff was instructed to return the food tray, but he refused. Ashby observed Plaintiff wrapping his limbs and hands in his bedsheets, which Ashby believed was an indication he was preparing for a physical altercation. Ashby opened the food slot and asked Plaintiff if he would hurt any deputies that entered the cell, and Plaintiff responded, "yes." (Ashby Aff., ECF No. 74-7.)

     Sergeant Gamboa made the decision to have Plaintiff removed from his cell and be taken to intake for further evaluation and observation because he was being combative and Gamboa believed Plaintiff was a danger to himself. (Gamboa Aff., ECF No. 74-8.)

     Ashby prepared the Detention Response Team (DRT) to assist in the extraction to move Plaintiff to a new cell. Ashby made the decision to use chemical agents to subdue Plaintiff because of Plaintiffs threats toward staff and his observed preparations for a physical altercation. Ashby gave instructions to Plaintiff to allow himself to be placed in restraints, and Plaintiff was warned a failure to follow instructions may result in physical force, including the use of chemical agents. Plaintiff did not follow the instructions. Ashby initiated the use of chemical agents because Plaintiff was a threat to himself and deputies if extracted in his agitated state. Plaintiff attempted to block the door and window with his mattress. (Ashby Aff., ECF No. 74-7.)

Wuepper administered two cannisters of chemical agents into Plaintiff's cell. After this, Ashby opened Plaintiff's cell door and Wuepper assisted in applying restraints to Plaintiff and escorted him to intake. Wuepper later returned to the holding cell and observed Plaintiff was compliant and not showing any adverse reactions to the chemical agents. (Wuepper Aff., ECF No. 74-9.)

Plaintiff, on the other hand, asserts he had returned the plastic food tray, yet chemical agents were still used against him while he was locked in his cell by himself, was not combative, and was not a threat to anyone.

The video of the incident shows the DRT team going to Plaintiff's cell. Plaintiff can be seen in the window of the cell and was told to give them the tray and "cuff up." Plaintiff was also told that if he did not follow the instructions, force would be used. Plaintiff complied and gave the tray back.

Plaintiff was then told to back away from the food slot twice, and he was cautioned that if he did not follow instructions, force would be used against him, including chemical agents. Plaintiff was then told to lie down and face away from the door and put his hands at his sides. Plaintiff stood in the window of the cell holding his mattress against the door. Plaintiff was asked if he would follow instructions and he put the mattress back up against the cell door and remained standing in the window. A cover was placed over the window by a deputy. Chemical agents were then deployed into Plaintiff's cell. Plaintiff was instructed to lie down on the ground with his hands out to the sides, facing the back wall. The DRT team then entered Plaintiff's cell and Plaintiff can be seen on the ground. Plaintiff was restrained and removed from the cell. Plaintiff can be heard coughing and clearing his throat while being restrained.

**B. Excessive Force Against a Pretrial Detainee and Failure to Intervene**

"[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Graham v. Connor*, 490 U.S. 386, 395, n. 10 (1989). In determining whether the force used against a pretrial detainee was excessive, the court utilizes an objective reasonableness standard. *Kingsley v. Hendrickson*, 576 U.S. 389, 396 (2015). "[A] pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id*. at 396-97.

"[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'" *Id*. at 397 (quoting *Graham*, 490 U.S. at 396). "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id*. "A court must also account for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Id*. (quoting *Bell v. Wolfish*, 441 U.S. 520, 540 (1979)).

The following is a non-exhaustive list of considerations that may bear on the reasonableness or unreasonableness of the force used:

> [T]he relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id*. (citing *Graham*, 490 U.S. at 396).

As is relevant here, a deputy can violate a prisoner's rights by failing to intervene in the use of excessive force. *See Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000); *Robins v.*

7

*Meechum*, 60 F.3d 1436, 1442 (9th Cir. 1995) (citations omitted). "If an officer fails to intercede, the constitutional right violated by the passive defendant is analytically the same as the right violated by the person who performed the offending action." *Tobias v. Arteaga,* 996 F.3d 571, 584 (9th Cir. 2021) (quotation marks and citation omitted). "[O]fficers, [however], can be held liable for failing to intercede only if they had an opportunity to intercede." *Cunningham*, 229 F.3d at 1289.

Courts have held that officers not present at the time of an alleged incident cannot be held liable under section 1983. *Cunningham*, 229 F.3d at 1289-90 (citing *Bruner v. Dunaway*, 684 F.2d 422, 426-27 (6th Cir. 1982). In addition, officers were not liable when they had no realistic opportunity to intercede during a quick sequence of events that led to a shootout. *Id.* Similarly, the Ninth Circuit held that officers could not be held liable for "fleeting acts which they did not commit, [that] came without warning, and [that they] could not have prevented." *Hughes v. Rodriguez*, 31 F.4th 1211 (9th Cir. 2022).

Summary judgment in excessive force cases is "granted sparingly" because these cases nearly "always require[ ] a jury to sift through disputed factual contentions, and to draw inferences[.]" *Lolli v. County of Orange*, 351 F.3d 410, 415-16 (9th Cir. 2003) (citation and quotation marks omitted). "To defeat summary judgment, [the plaintiff] must show that a reasonable jury could have found that the officer's use of force was excessive." *Id*. (citation omitted).

**C. Analysis**

First, Reza argues that if Santos and Wuepper are granted summary judgment, then summary judgment must also be granted in her favor; however, the undersigned has recommended denial of both Santos' and Wuepper's motions for summary judgment because of

the existence of disputed material facts concerning whether it was objectively reasonable to deploy two cannisters of chemical agents into Plaintiff's cell under the circumstances. (*See* ECF Nos. 112.)

Second, Reza argues that she did not have a reasonable opportunity to know of and intervene in the alleged constitutional violation. Reza states that she was not part of the decision to move Plaintiff from his cell, and was training under Wuepper when that decision was made. Wuepper was activated to go to Plaintiff's housing unit for a possible cell extraction and asked Reza to get a video camera and go to that unit. Reza had not previously seen a cell extraction and had not been trained on how to conduct a cell extraction. She was not assigned to participate in removing Plaintiff from his cell, but was only asked to film the events occurring at his cell. She further asserts that she was standing on the stairs, 15-20 feet away from Plaintiff's cell and observed that Plaintiff was not obeying Deputy Ashby's commands. She claims did not know whether force, including chemical agents, would be used. She did not know why Ashby authorized the use of pepper spray and she was not involved in deploying it. Even if she thought a constitutional violation was occurring, Reza maintains that she could not have physically intervened given the distance she was standing away from Wuepper and Plaintiff's cell. (Reza Aff., ECF No. 74-12.)

Plaintiff, on the other hand, argues that at the time the pepper spray was being deployed, Plaintiff had given the food tray back and was locked in his cell, and Reza could have at least given a verbal command to the deputies to stop.

The undersigned has already concluded in connection with Santos' and Wuepper's motions for summary judgment that there is a genuine dispute of material fact regarding whether

it was objectively reasonable to deploy two cannisters of chemical agents into Plaintiff's cell when Plaintiff had returned his food tray and was locked alone in his cell.

The court similarly finds whether Reza knew there was a constitutional violation is genuinely disputed. Reza states that when she arrived at Plaintiff's cell she did not know if force, including pepper spray, would be used against Plaintiff; however, the video clearly shows that the DRT team (which Reza accompanied) brought the chemical agent cannisters and set them up when they arrived outside of Plaintiff's cell. Therefore, Reza was aware that the deployment of chemical agents was contemplated. She was also aware that at the point the chemical agents were being prepared for use that Plaintiff had returned his tray and was locked alone in his cell.

Moreover, this is not a case where there was a quick sequence of events or where the actions taken were fleeting and without warning. A warning was given that if Plaintiff did not follow instructions, chemical agents might be used against him, and when Plaintiff did not follow those instructions, it took some time for Ashby to assemble the cannisters for Wuepper to deploy into Plaintiff's cell. Reza claims she was 15-20 feet away from Plaintiff's cell, but she looks to be closer than that on the video and a jury could conclude she had sufficient time to intervene from where she was standing while the cannisters were being prepared.

Reza also argues that she could not have intervened because she would have had to stop filming the incident and she was required to film the event under Nevada Revised Statute (NRS) 289.839.

NRS 289.830[2] states that a law enforcement agency shall require uniformed peace officers who "routinely interact with the public to wear a portable event recording device while on duty." NRS 289.830(1). The device must be active "whenever a peace officer is responding to

---

[2] Reza cites NRS 289.839, but the correct provision is NRS 289.830.

a call for service or at the initiation of any other law enforcement or investigative encounter between a uniformed police officer and a member of the public[.]" NRS 289.830(1)(a). Law enforcement includes the sheriff's office. NRS 289.830(3)(a)(1). "'Portable event recording device' means a device issued to a peace officer by a law enforcement agency to be worn on his or her body and which records both audio and visual events occurring during an encounter with a member of the public while performing his or her duties as a peace officer." NRS 289.830(3)(b).

NRS 289.830 does not appear to apply here because Reza states that she went to intake to retrieve a video camera and reported to Plaintiff's cell, and this was not a recording device issued to wear on her body. (Reza Aff., ECF No. 74-12 at 2 ¶ 4.) The court has concluded that the fact that an officer is assigned to record an incident does not, in and of itself, absolve the officer of liability under a failure to intervene theory. (ECF Nos. 40, 49.) Nor does NRS 289.830 itself absolve an officer of liability for a failure to intervene in a constitutional violation where he or she has a reasonable opportunity to do so.

In sum, there is a genuine dispute regarding whether there was an underlying constitutional violation, whether Reza knew there was a constitutional violation, and if so, whether Reza had a reasonable opportunity to intervene. If a jury finds that it was objectively reasonable to deploy the two cans of chemical agents into Plaintiff's cell under the circumstances, then Reza is absolved of liability. If a jury finds it was not objectively reasonable, a jury will have to determine whether Reza had a reasonable opportunity to intervene. As such, Reza's motion for summary judgment should be denied.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **DENYING** Reza's motion for summary judgment (ECF No. 74).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: September 13, 2022

_____
Craig S. Denney
United States Magistrate Judge